IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ED MONSIVAIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3582 |
| | § | |
| ARBITRON, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court on diversity jurisdiction[1] and alleging retaliatory discharge in violation of Chapter 21 of the Texas Labor Code after Plaintiff Ed Monsivais complained that his co-worker and former fiancé, Erika Paez, was sexually harassing him, is Defendant Arbitron, Inc.'s ("Arbitron's") motion for summary judgment (instrument #14).

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions

---

[1] It is undisputed that Monsivais is a citizen of Texas, while Arbitron was organized under the laws of Delaware and has its principal place of business in Columbia, Maryland. 28 U.S.C. § 1332(c)(1)("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business.").

-1-

on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated

assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

## Applicable Law

Chapter 21, referred to as the Texas Commission on Human Rights Act ("TCHRA"), "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the Civil Rights Act of 1964 (Title VII) that provides the framework for employment discrimination claims in Texas." *Prairie View A&M*

*University v. Chatha*, 381 S.W. 3d 500, 503 (Tex. 2012).[2]   Where the evidence of retaliation is circumstantial, the employee must establish a *prima facie* case under the *McDonnell Douglas* burden-shifting framework.   *Lucan v. HSS Systems, LLC*, ___ S.W. 3d ___, 2014 WL 3865811, at *2 (Tex. App.--Eastland July 31, 2014), *citing Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973); and *Crutcher v. Dallas ISD,* 410 S.W. 3d 487, 493 (Tex. App.--Dallas 2013).   Because a major purpose of the TCHRA "is to coordinate Texas law with federal antidiscrimination and retaliation laws under Title VII," Texas courts "look to analogous federal statues and the cases interpreting them to guide [them] when interpreting the TCHRA."   *Id., citing In re United Servs. Auto Ass'n*, 307 S.W. 3d 299, 308 (Texas 2010), and *Quantum Chem Corp. Toennies*, 47 S.W. 3d 473, 476 (Tex. 2001).

Initially a plaintiff must establish a *prima facie* case of retaliation by showing that (1) he engaged in protected activity listed in Section 21.055 of the Texas Labor Code[3], (2) an adverse

---

[2] Chapter 21 does not have a parallel provision for the recent 2009 amendment of Title VII by the Lilly Ledbetter Fair Pay Act, providing that "a discriminatory pay decision occurs each time a paycheck is received and not just when an initial salary decision is made."   *Id.*   The Commission on Human Rights, however, has been replaced by the Texas Workforce Commission. *Id.* at 502 n.1.

[3] Section 21.055 ("Retaliation") provides that an employer "commits an unlawful employment practice" if it "retaliates or discriminates against a person who, under this chapter:   (1)

employment action occurred, and (3) a causal link exists between the filing of the claim and the adverse action." *Lucan*, 2014 WL 3865811, at *3; *Crutcher*, 410 S.W. 3d at 493, *citing Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006), and *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). Retaliation is not restricted to "ultimate employment decisions," but includes actions which a reasonable employee would find materially adverse, i.e., "'likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers.'" *Cutcher, id., citing Burlington N., id.* at 67-68. It is an objective, fact-specific review "'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Id., citing id.* at 69.

If the plaintiff makes a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reasons for the adverse employment action. *Id.* at 493*, citing Pineda*, 360 F.3d at 487.

The burden then shifts back to the plaintiff to prove that each of the reasons provided by the employer is pretextual. *Id.* at 494*, citing Gonzales v. Champion Techs., Inc.*, 384 S.W. 3d 462, 466 (Tex. App.--Houston [14th Dist.] 2012, no pet.), and *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). For a long time

---

opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

Texas required that the employee need only "show that discrimination was a motivating factor in an adverse employment decision." *Quantum Chem. Corp. v. Toennies*, 47 S.W. 3d 473, 482 (Tex. 2001).[4]  *See* Texas Labor Code § 21.125(a)("Except as otherwise provided, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ."  Nevertheless, in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 1524 (2013)(5-4), the majority of the Supreme Court held that retaliation claims under Title VII require evidence of traditional but-for causation, not the lesser "motivating factor" standard of causation. *In accord, Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389-90 (5th Cir. 2014); *Little v. Technical Specialty Products LLC*, No. 4:11-CV-717, 2013 WL 575533, at *3 (E.D. Tex. Mar. 18, 2014). Circumstantial evidence that a plaintiff may use to demonstrate a causal link between the protected action and the adverse employment decision retaliation includes, but is not limited to, "(1) the employer's failure to follow its usual policy and procedures in

---

[4] The Texas Supreme Court had held that a motivating factor is the correct standard of causation of a plaintiff in all TCHRA unlawful employment practice claims, regardless of whether the plaintiff has direct or indirect evidence to support his case. *Quantum Chemical*, 47 S.W. 3d at 481; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2004); *Dep't of Human Servs. v. Hinds*, 904 S.W. 2d 629, 636 (Tex. 1995).

carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge." *Id.* at 494.

### Arbitron's Motion for Summary Judgment (#14)

Arbitron, a national media research company that gathers market and media research that Arbitron considers confidential and proprietary[5] and which was acquired by Nielson Holdings, N.V. in September 2013, moves for summary judgment on Plaintiff's retaliation claim as a matter of law because Plaintiff admits that his complaint was not based on a protected category and therefore he did not engage in a protected activity under the TCHRA.   In addition, Arbitron argues that Plaintiff cannot show that Arbitron's legitimate, nonretaliatory reasons for discharging him were a pretext for retaliation.

During the course of his employment after he was first hired as a Membership Representative responsible for recruiting households to participate in radio and television ratings, at Arbitron from June 2004 until his termination on May 29, 2012

---

[5] #14, Ex. B, Arbitron's Vice President of Panel Services & Field Operations Nancy Weissman's Decl. at ¶2.

Plaintiff held various positions.  He worked out of his home, but traveled door-to-door for part of his job.  Arbitron provided him with equipment for his work, including a vehicle, a laptop computer, a computer docking station, a GPS navigation system, a cellular telephone, internet service, scanner, fax machine, printer, and electronic equipment for reception of TV and radio station signals ("PPM equipment"), which were kept in his home. Ex. A, Plaintiff's Dep., 38:17-39:21; 40:2-19.  Because its research was confidential and proprietary information, Arbitron had all employees sign an Employee Disclosure and Assignment Agreement reflecting that they would not disclose any unpublished, proprietary or confidential information.  Ex. A. Pl.'s Dep., 87:17-89:16 and Ex. 7.  Employees who worked at home were required to secure their Arbitron equipment.  Ex. B, Weissman Decl. at ¶ 2.

In August 2005, according to Plaintiff, in a domestic dispute his ex-wife damaged Plaintiff's Arbitron equipment by dashing his cell phone against a wall, throwing away his PPM equipment, giving or throwing way his laptop, and pouring sugar into the vehicle's gas tank ("2005 incident").  Ex. A, Pl.'s Dep., 44:20-45:8; 48:2-24.  He reported the event to his supervisor, Todd Mulville ("Mulville").  Plaintiff also warned Arbitron that his ex-wife had threatened to visit Arbitron's work site with a weapon.  Ex. C, Decl. of Field Operations Manager Todd Mulville at ¶ 3; Ex. D., Director for PPM Panel Operations and Plaintiff's supervisor

Richard Dezelon's Decl. at ¶ 4.   In response Arbitron barred employees from going to the Houston work sites, so they had to meet at temporary public locations such as hotels and restaurants.  Ex. C., Mulville Decl. at ¶ 3; Ex. D, Dezelon Decl. at ¶ 4.  Plaintiff was placed on administrative leave for several weeks.  Ex. D. Dezlon Decl., at ¶ 4.   Moreover on Sept. 16, 2005 Arbitron transferred Plaintiff for a time to another position and replaced his equipment.  Ex. A, Pl.'s Dep., 48:25-49:9; 51:11-52:3; 119:8-120:8, and Ex. 10. In March 2006, Arbitron gave plaintiff a choice of three options:  returning to his earlier position as a Field Panel Relations Specialist, but he needed to provide documentation indicating that he was acting to prevent further damage to Arbitron's property and work disruption; relocating to Colombia, Maryland to an open position on the Panel Relations Team; or preparing a mutual termination package with human resources.  Ex A, Pl.'s Dep., 122:21-124:23 and Ex. 11; Ex. C, Mulville Decl. at ¶ 5; Ex. D. Dezelon Decl. at ¶ 5.  Plaintiff chose the first option with the understanding that he must keep Arbitron's equipment secure and avoid further disruption to the business.

Nevertheless in April 2012 Erika Paez ("Paez"), an Arbitron employee and ex-fiancé of Plaintiff, complained to law enforcement that someone had posted on the internet nude photos and videos of her engaging in sex with Plaintiff ("2012 incident").  Ex. A, Pl.'s Dep., 174:4-182:23; 187:23-188:24 and Exs. 16 and 17.  On April 13,

2012 the Harris County Constable served Plaintiff with a search warrant and seized his Arbitron equipment from his home, including the laptop computer, docking station, and cellular telephone. Ex. A, Pl.'s Dep., 176:6-177:11 and Ex. 16. Plaintiff reported the seizure to Mulville, but Arbitron did not gain repossession of the equipment for several weeks and its business was accordingly again disrupted. *Id.* at 177:8-20. Ex. B, Weissman Decl. at ¶ 7. Arbitron placed Plaintiff on paid administrative leave and investigated the reason for the seizure. Ex. B, Weissman Decl. at ¶ 4. Pursuant to a request from Arbitron, Plaintiff provided a written statement and spoke to Weissman regarding the 2012 incident, i.e., that police had searched his house for pornographic photos or videos of Paez; Weissman also spoke to Paez during her investigation of the event. Ex. A, Pl.'s Dep., 174:22-177:11; 181:2-11 and Ex. 16; Ex. B, Weissman Decl. ¶ 4. In neither his written statement nor in subsequent discussions with Weissman did Plaintiff explain why he was suspected of possessing naked photos of Paez, nor state that he believed that Paez filed a police report in order to harass him, nor claim any harassment by Paez, and he insisted that he had only a professional relationship with her. Ex. B, Weissman Decl. at ¶ 5; Ex. A. Pl.'s Dep., 178:5-181:17. The only information he provided was that his Arbitron equipment had been confiscated by the Constable.

On the other hand, Paez told Weissman that she and Plaintiff

had previously had a consensual sexual relationship that ended a few years ago and that she had asked law enforcement officers to investigate after discovering pictures on the internet of herself having sex with Plaintiff, but she denied that Plaintiff had sexually harassed her at work.  Ex. B, Weissman Decl. at ¶ 6.

Weissman decided to allow Plaintiff to return to work for several reasons: the Constable's office informed her that the criminal investigation would continue for several months; Paez denied there was any work site harassment; Plaintiff did not inform Arbitron of any current relationship with Paez; and this incident appeared to Weissman to be the only time when he failed to secure his Arbitron equipment.[6]  Ex. B, Weissman Decl. at ¶ 8.  She was unable to reach him, however, because his phone and computer had been seized.  Ex. A, Pl.'s Dep., 198:18-199:3; Ex. B, Weissman Decl. at ¶ 8.

Around May 16, 2012 Weissman informed Plaintiff by letter that he could return to work right away if he reviewed and executed a copy of Arbitron's policies and procedures.  Ex. A, Pl.'s Dep. 199:6-15 and Ex. 20; Ex. B, Weissman Decl. at ¶ 10.  She received

---

[6] In a footnote and with supporting evidence, Arbitron states that Weissman was not Plaintiff's supervisor in 2005, had no knowledge of his previous failure in 2005 to secure Company equipment and the resulting business disruption, and she did not review his personnel file, in which the 2005 incident was documented, until her investigation of Plaintiff's complaint at the end of May 2012 when Arbitron was confirming that Plaintiff and Paez had received training about its harassment policy.  Ex. A, Pl.'s Dep. 101:15-101:19, Ex. B, Weissman Decl. at ¶ 9.

a response through Plaintiff's supervisor, Todd Mulville, and a
couple of days later a complaint from Plaintiff of "harassment in
the work place by Ericka Paez." Ex. A, Pl.'s Dep. 190:23–199:5 and
Ex. 19.  Plaintiff stated that his and Paez's relationship had
formally terminated in December 2010, but that since then Paez had
made unwanted telephone calls and left numerous text messages and
voice mails on his cell phone and had refused to pick up her
belongings from his house.  *Id.*  Plaintiff also charged that the
2012 incident "was a culmination of several acts of harassment and
unprofessional conduct," and he implied that she falsely alleged
that he posted the photos of her on the internet to destroy his
marriage and career.  *Id.*  The complaint surprised Weissman after
his earlier insistent denial of any problem with Paez.  In
response, Arbitron again placed Plaintiff on administrative leave
to investigate his claims of harassment, while his criminal
investigation by the Constable's office also proceeded.  Ex. B,
Weissman Decl. at ¶ 11.

On reviewing Plaintiff's personnel file for the investigation
in accordance with Arbitron's policies for addressing harassment
complaints, Pam Crabhil ("Crabhil"), Arbitron's Talent and Employee
Relations Director, and Weissman learned about Plaintiff's 2005
incident arising from a relationship problem and resulting in the
loss of Arbitron's equipment, endangering its confidential
information and disrupting its business.  Ex. B Weissman Decl. at

¶ 12.   Weissman informed Mulville, who confirmed the 2005 events with Plaintiff's ex-wife and also that Plaintiff had been admonished by Arbitron and had promised to secure his Arbitron property.  Ex. B, Weissman Decl. at ¶ 12.

Weissman declared under penalty of perjury that she was unable to find evidence of Plaintiff's allegations of workplace harassment against Paez because both Plaintiff and Paez knew of Arbitron's policy to immediately report any purported harassment and neither had reported any before April 2012 (although Plaintiff claimed it began in 2010), because Paez insisted Plaintiff's allegations were false, and because there was no evidence except the conflicting statements of Plaintiff and Paez.  Ex. B, Weissman Decl. at ¶ 13; Ex. A, Pl.'s Dep. 65:7-84:10 and Ex. 4 (acknowledgment signed by Plaintiff that he received Arbitron's *Code of Ethics and Conduct* and Ex. 5 (copy of Arbitron's *Code of Ethics and Conduct* addressing procedures to report harassment to supervisors and/or a confidential ethics hotline).

Because the confidentiality of its market research and consumer information was so important to Arbitron, on May 29, 2012 Weissman decided to and did discharge Plaintiff on the grounds that he had twice engaged in conduct that led directly to the confiscation of or damage to Arbitron property, an inability to perform his assigned duties, and disruption of Arbitron's business. Ex. B, Weissman Decl. at ¶ 14; Ex. A, Pl.'s Dep. 187:11-190:9 and

Ex. 18.

Arbitron contends that because Plaintiff has only circumstantial evidence of retaliation, the *McDonnell Douglas* shifting burden framework applies. Arbitron maintains that Plaintiff cannot establish a *prima facie* case of retaliation (that he engaged in a protected activity, suffered an adverse employment action, and a causal connection exists between the two) because he did not engage in a statutorily protected activity. He complained that Paez was harassing him with unwanted phone calls, antagonized him in the elevator after a business team meeting in Houston, and refused to retrieve her personal things from his home after their relationship ended. These are minor annoyances[7] after their

---

[7] "The antiretaliation provision . . . prohibit[s] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), *citing* 2 EEOC 1998 Manual § 8, pp. 8-13. *See also Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 331-32 (5th Cir. 2009)("The parties dispute whether she suffered an adverse employment action. Stewart points to several events: (1) she was placed on administrative leave for three weeks' (2) upon returning, she was reassigned to a new supervisor and given a heavier workload; (3) personal items were taken from her desk; (4) the locks on her office had been changed and she was not allowed to close her office door; and (5) she was chastised by superiors and ostracized by co-workers. As a matter of law, the latter three of these allegations do not rise to the level of material adversity, but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct.").

serious relationship ended, not sexual harassment.[8]  The testimony
at his deposition reads as follows:

> Q.  Did--because you--you filed a claim or made a claim
> later that [Paez] harassed you, sexually harassed you,
> I'm trying to find out the instances of those sexual
> harassments.
>
> A.  Sexual harassment?
>
> Q.  Right.  Did you make a claim that Erika had sexually
> harassed you?
>
> A.  She had harassed me.
>
> Q.  Just harassment, not sexual?
>
> A.  Correct.
>
> Q.  So you weren't claiming sexual harassment?
>
> A.  No.

Ex. A, Pl.'s Dep. 163:20-164:6.  Thus Plaintiff clearly did not
attribute the alleged harassment to a protected characteristic
under Chapter 21 of the Texas Labor Code, i.e., "race, color,
disability, religion, sex, national origin, or age."  Tex. Labor
Code § 21.051.  Claims of harassment that do not relate to a
"protected" characteristic" cannot be considered "protected
conduct" for a *prima facie* case of retaliation under the TCHRA.
*Moore v. Delta Airlines, Inc.*, No. 3:10-CV-2241-K, 2012 WL 685414,
at *9 (N.D. Tex. Mar. 1, 2012), *citing Harris-Childs v. Medco
Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006), and

---

[8]  In his response, Plaintiff concedes that these "minor
annoyances" "were not the basis of the Plaintiff's retaliation
claim."  #15 at p. 16.

*Wiltz v. Christus Hosp. St. Mary*, No. 1:09-CV-925, 2011 WL 1576932, at *4, 11 (E.D. Tex. Mar. 10, 2011)("Wiltz's deposition testimony conclusively establishes that no protected trait was a factor motivating any of the alleged harassment"; and internal complaint to management" must relate to "conduct prohibited by Title VII [to constitute] 'protected activity' for purposes of a retaliation claim"). *See also Brown v. United Parcel Service, Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010)(defining "protected activity" as "opposition to any practice rendered unlawful by Title VII.").[9]

---

[9] This Court further notes that the charge of discrimination filed on June 4, 2012 with the Texas Workforce Commission/Civil Rights Division and EEOC (#15, Ex. 15) also does not specifically charge "sexual" harassment, but only reflects a claim for retaliation. The facts alleged in the charge to support Plaintiff's claim of alleged harassment relate to the search of his home for the photographs Paez has complained to law enforcement that Plaintiff may have posted on the internet, not to his gender:

> Several weeks ago, my home was served with a warrant by another Arbitron company employee by the name of Erika Paez that I had previously dated (with the knowledge of my supervisors and managers) approximately three years ago.  She had alleged that images and video of her  and me were appearing on the internet.  The warrant was served at my home and home office.

> The search warrant identified among materials to be seized, "Any and all information whether stored electronically as computer data or on paper and all data including communications, such as text discussing, referring to, or otherwise regarding the sexual conduct and/or the exchange of pornography, images including images by the names stated above and otherwise, regarding the offense of improper Photography."   In light of Paez's complaint to the Constable's office about nude pictures of the two having sex on the internet, it would appear that any sexual harassment would be of Paez.  Certainly if Plaintiff posted the photographs, that activity would not be protected by the statute.

Arbitron further argues that Plaintiff cannot demonstrate that Arbitron's legitimate, nonretaliatory reason for firing Plaintiff (that on two different occasions he engaged in personal relationships and/or conduct that directly resulted in confiscation of or damage to Arbitron property, which in turn resulted in his inability to perform his work duties and disrupted Arbitron's business) was a pretext for retaliation.   Outside of pure speculation, Plaintiff has no evidence that his complaint was a "but for" cause of his termination.

### Plaintiff's Response (#15)

Plaintiff argues that Arbitron's articulated, legitimate, nondiscriminatory reason for firing Plaintiff is pretextual because Arbitron had already decided on May 16, 2012, with the knowledge that Arbitron property had been seized from Plaintiff's home pursuant to a search warrant issued and executed by the Harris County Constable, that Plaintiff could return to work.   Only after he complained of sex discrimination and harassment by Paez in a letter received on May 18, 2012 did Arbitron decide to terminate his employment on May 29, 2012.   Emphasizing the close temporal proximity, Plaintiff claims that he was terminated in retaliation only eleven days after he engaged in protected activity, i.e., his complaint to Arbitron that Paez was harassing him.   At the least, he insists there are genuine issues of material fact as to his

retaliation claim based on the temporal proximity and the fact that Arbitron used circumstances it already had knowledge of when Plaintiff was told to return to work to terminate him after his harassment charge.

Plaintiff highlights his excellent performance reviews. He also shows that he had informed Mulville of his prior, but terminated, romantic relationship with Paez and that Mulville had told Plaintiff that he had to report the relationship to Organization Effectiveness. Pl.'s Dep. at 195:18-196:2, 196:22-197:1, and Ex. 1. Arbitron subsequently had a meeting in which Mulville and Shelby Kane notified Plaintiff and Paez that if they were married, one of them would have to leave. Pl.'s Dep. at 197:7-23, and Ex. 1. In addition he submits evidence of the search warrant authorizing the search of his home and seizure of his Arbitron equipment. Ex. 7. Plaintiff reported the seizure to Mulville right after the search was finished. Weissman subsequently asked him for a written report, and Plaintiff faxed Arbitron a statement about the incident and the seizure, with copies of the search warrant and inventory and return list on April 14, 2012. Ex. 7. Plaintiff claims that he reasonably believed at that time that Paez had executed the search warrant to harass him.

Initially after the search and seizure Plaintiff was put on administrative leave on April 13, 2012 and Arbitron began investigating why the equipment was seized, but on May 16, 2012

Plaintiff received a letter from Arbitron,[10] signed by Weissman, that he could return to work immediately, but that he had to review and sign the "Arbitron Acceptable Use Policy" and "Arbitron's Code of Ethics and Conduct." Weissman sent Mulville an email with a copy of the letter attached, informing him it would be sent to Plaintiff by overnight delivery; Mulville had no objections. Exs. 8 & 9.

In a letter dated May 14, 2012, but received on May 18, 2012, Plaintiff complained of three incidents of sexual harassment by co-worker Paez. Ex. 10. First he asserted that although their relationship had ended more than three years ago and that he had then asked Paez not to communicate with him or his children about the relationship, in particular through his work phone and/or email or while at work, but he claims that she continues to make unwanted phone calls to his company cell phone and sent multiple text messages and voice mail messages. Second, she had confronted him in the elevator at a Houston team meeting and asked him why he was acting this way, and he responded that his lawyer had told him not to communicate with her. Nevertheless she continued to harass him and to communicate with his daughter. Third, Plaintiff told Arbitron that Paez had ordered the search warrant of his home.[11]

---

[10] Return to Work Letter, dated May 16, 2013, Ex. 8.

[11] The Court observes that no private person can "order a search warrant." The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Limon*

*v. State*, 340 S.W. 3d 753, 756 (Tex. Crim. App. 2013).  The entry
of law enforcement officials into a residence is a "search" under
the Fourth Amendment and if done without a warrant, it is
presumed to be unreasonable unless it falls within one of the
well-defined exceptions to that principle.  *Id.*  As the
Fourteenth Court of Appeals in Houston explains, *Douds v. State*, _
_ S.W. 3d ___, 2014 WL 2619863, at *4 (Tex. App.--Houston [14th
Dist.] June 5, 2014):

> "Although the test of the Fourth Amendment does not
> specify when a search warrant must be obtained, [the
> Supreme Court of the United States has inferred that a
> warrant must generally be secured." *Kentucky v. King*,
> ____ U.S. ___, 131 S. Ct. 1849, 1956 . . . (2011).
> Thus "it is a cardinal principle that 'searches
> conducted outside the judicial process, without prior
> approval by a judge or a magistrate, are *per se*
> unreasonable under the Fourth Amendment-subject only to
> a few specifically established and well-delineated
> exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390
> (1978). . . .

Paez filed a complaint with the Constable's office about the
pictures on the internet, but the Constable's office had to
obtain a judge or magistrate's approval for a search warrant to
enter Plaintiff's home and conduct a search.  In *Illinois v.
Gates*, 462 U.S. 213, 238 (1983), the Supreme Court held that a
totality of the circumstances analysis should be used to
determine whether probable cause exists and opined,

> The task of the issuing magistrate is simply to make a
> practical, common sense decision whether, given all the
> circumstances set forth in the affidavit before him,
> including the "veracity" and "basis of knowledge" of
> the persons supplying hearsay information, there is a
> fair probability that contraband or evidence of a crime
> will be found in a particular place.  And the duty of
> the reviewing court is simply to ensure that the
> magistrate has a 'substantial basis . . . for
> conclud[ing] that probable cause existed.

*See also Hennessey v. State*, 660 S.W. 2d 87, 89-90 (Tex. Crim.
App. 1983).  Texas requires a sworn affidavit that sets forth
sufficient facts to establish probable cause in order to obtain a
search warrant.  Tex. Code Crim. Proc. Ann. art. 18.01(b), (c)
(West 2012).  *Allen v. State*, No. 07-13-00066-CR, 2014 WL

Although he had asked her to remove his personal belongings from his home, she had not done so and was now accusing him of uploading pornographic images of Paez to the internet.  After his harassment complaint on May 18, 2012, Arbitron reevaluated the two incidents where Arbitron property had been destroyed or confiscated, suddenly determined that it was apparent Plaintiff had not abided by the terms and conditions of his continued employment by Arbitron and that he was unable to "manage his personal relationships," which caused excessive disruption to Arbitron's business.  Ex. 12.  According to an email from Crabil, Arbitron discharged him for misconduct.  Ex. 13.

Plaintiff incorrectly cites the "motivating factor" standard as an element of the *prima facie* case of retaliation.  #15 at p. 12.  *See Nassar*, 133 S. Ct. at 1524.

Plaintiff conclusorily contends that his complaint to Weissman, dated March 14, 2012, put Arbitron on notice that he felt he was being treated differently than other employees who had destroyed or lost Arbitron equipment:  "In the past, when field staff lost laptops or equipment by theft or fire, or crashed drowned vehicles, a replacement was provided as soon as possible

---

3928770, at *1 (Tex. App.--Amarillo Aug. 12, 2014).  The applicant must have evidence that supports more than a bare suspicion, but less than that required for conviction.  *Houston v. State*, No. 03-13-00577-CR,  2014 WL 3893073, at *1 (Tex. App.-Austin Aug. 6, 2014), *citing Brinegar v. United States*, 338 U.S. 160, 175 (1949).

without affecting loss of productivity.  I, on the other hand, appear to be in a different category." Ex. 10.

This Court would point out that for the fourth prong of a *prima facie* case of discrimination, "similarly situated" employees are employees who are treated more favorably in "nearly identical" circumstances[12]; the Fifth Circuit defines "similarly situated" narrowly. *Silva v. Chertoff*, 512 F. Supp. 2d 792, 803 n.33 (W.D.

---

[12] *See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009), discussing "similarly situated" employees:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.  Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated.  This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances."  The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.  And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.  If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of employment discrimination analysis.  [footnotes omitted]

Tex. 2007).   Similarly situated individuals must be "nearly identical" and must fall outside the plaintiff's protective class. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).   Where different decision makers or supervisors are involved, their decisions are rarely "similarly situated" in relevant ways for establishing a *prima facie* case.   *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971 (E.D. Tex. 2004), *citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) for the proposition that "[a] demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making").   *See also Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004)("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"); *Hockman v. Westward Communications, LLC*, 282 F. Supp. 2d 512, 527-28 (E.D. Tex. 2003)("The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard--employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'"), *citing Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001)(Employees are not in nearly identical circumstances when their actions were reviewed by

different supervisors; "to establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to [] [another] employee under 'nearly identical' circumstances' . . .; that is "the misconduct for which [plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].'"")). Plaintiff not only fails to allege factual details to support a "similarly situated" claim, not even names, dates, or supervisors, but also submits no documentary evidence as proof. During his deposition, he did testify vaguely about other Arbitron employees who lost or destroyed Arbitron equipment, missing names, dates, and other key information. #15, Ex. A, Pl.'s Dep. 110:24–117:11. More important, nearly all of what he testifies he "knows" is hearsay and inadmissible.

Plaintiff insists his complaint did not have to use the "magic words," "sexual harassment," as long as "protected opposition at least alert[s] the employer to the employee's reasonable belief that unlawful employment discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. Dec. 29, 2010). Even though his deposition did not identify his complaint of sexual harassment as the "protected activity" for his retaliation claim, Plaintiff maintains that Arbitron knew that the continuing harassment he complained of arose from an intimate relationship that had ended, as indicated in Arbitron's references to Plaintiff's complaint to Weissman in his termination letter.

Pl.'s Affid., Ex. 2, "I felt this was sex discrimination and harassment at work."). He cites *Hunicke v. Seafarers Int'l Union*, No. 14-12-0199-CV, 2013 WL 2444634, at *8 (Tex. App.--Houston, June 4, 1013), *citing Gaines v. Hamman*, 358 S.W. 2d 557, 562 (Tex. 1962)("If conflicting inferences may be drawn from a deposition and from an affidavit by the same party in opposition to a motion for summary judgment, a fact issue is presented.").[13]

---

[13] This Court notes that in *Hunicke*, in addressing a statute-of-limitations issue, the deposition statement and the affidavit statement were not contradictory. 2013 WL 2444635, at *8 ("Hunicke's statement that 'the most egregious acts' contributing to her sexual-harassment claim occurred more that 180-days before she filed her complaint is a factual assertion. Nevertheless, it is not clearly contradicted by her affidavit in which she testifies that certain acts occurred within the limitations period but does not testify those were among the 'most egregious' acts contributing to her claim. Because we can infer from this evidence that at least one act contributing to Hunicke's sexual-harassment claim occurred during the limitations period, she has presented a fact issue."). In *Gaines v. Hamman*, however, there was a direct contradiction: early on the plaintiff testified during his deposition that there was no express agreement or contract between him and the defendant, but in a later affidavit he provided details of an alleged agreement upon which his claims were based. The Texas Supreme Court concluded that where "conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented" and summary judgment denied. 358 S.W. 2d at 563-63.
In contrast, during Plaintiff's deposition, Plaintiff directly testified that Paez's alleged harassment of him was not sexual. #14, at p. 11, quoting Ex. A, Pl.'s Dep.. 163:20-164:6. Furthermore, unlike the Texas Supreme Court's holding that a contradiction between deposition and affidavit statements raises a fact issue, under Fifth Circuit law, which binds this Court, a "nonmovant cannot defeat summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *McArdle v. Dell Products,* LP, 293 Fed. Appx. 331, 335 (5th Cir. Sept. 22, 2008)("'It is well

As evidence for the third prong of a *prima facie* case of retaliation, i.e., a causal link between the adverse action and plaintiff's "protected activity," Plaintiff asserts the close temporal proximity between his complaint letter and his termination.  Plaintiff observes that Arbitron does not address the adverse action claimed in the Original Petition, i.e., that he was terminated because of his May 14, 2012 complaint of sexual harassment by Paez, received by Arbitron on May 18, 2012 or Plaintiff's positive performance reviews before his termination, or the fact that he was permitted to come back to work on May 16, 2012.  In *Martin v. Kroger*, 65 F. Supp. 2d 516, 558 (S.D. Tex. 1999), *aff'd*, 224 F.3d 765 (5th Cir. 2000), the district court identified three factors to consider in determining whether a causal link had been shown for a *prima facie* case:  "(1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures in terminating the employee, and (3) the temporal relationship between the employee's

---

settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony. . . . However, if the affidavit merely supplements rather than contradicts prior deposition testimony,' it may be considered when resolving the motion for summary judgment.")(*quoting S.W.S. Erectors*, 72 F.3d at 495, 496; *Love v. Motiva Enterprises, LLC*, 349 Fed. Appx. 900, 903-04 (5th Cir. Oct. 16, 2009).  Plaintiff has not offered an explanation for the clear discrepancy between his deposition testimony and his subsequent contrary affidavit.  Therefore the Court does not consider the affidavit and finds it inadmissible. *S.W.S. Erectors*, 72 F.3d at 496.

-27-

conduct and discharge. Plaintiff has shown his positive performance record at Arbitron, with one review signed only two months before he was discharged.[14] Arbitron states that Plaintiff was terminated because after his personnel file and the conditions of his continued employment were reviewed, "it is apparent that you have not abided by the terms and conditions of your continued employment with Arbitron." Termination Letter dated May 29, 2012, Ex. 12. Plaintiff emphasizes that his personnel file existed when Arbitron decided on May 16, 2012 to allow him to return to work before it received his complaint on May 18, 2012. Mulville was informed by Weissman about the decision to return Plaintiff to work the night before Plaintiff was notified (Ex. 9). Even though Mulville knew of the 2005 incident, he did not oppose that decision.[15] The sudden heavy weight given to the 2005 incident and

---

[14] In its reply (#16 at p. 5 n.1), Arbitron responds that Plaintiff's positive performance record is irrelevant because he was not discharged because of his work performance. Moreover the relevant factor is disciplinary history, not performance history, and his placement on administrative leave twice during his employment is directly relevant to his ultimate discharge. In addition, Plaintiff has provided no competent evidence that Arbitron failed to follow its own policies and procedures in its handling of his case. Therefore, Plaintiff has not and cannot establish a causal connection between his complaint letter and his termination. This Court agrees.

[15] Plaintiff alleges that he told Mulville about what his ex-wife did to his Arbitron equipment. #115, Pl.'s Dep., Ex. A, 44:20-48:24. Mulville, in his Declaration (#15, Ex. C, ¶ 7), points out what was not revealed and states that

> prior to my receipt of the May 2012 letter, I did not
> know that Mr. Monsivais and Ericka Paez were dating or

the quick reversal of the decision to allow him back only after Arbitron received Plaintiff's harassment complaint raises a genuine issue of material fact as to pretext.  Indeed, after the Harris County Constable's officers seized Plaintiff's Arbitron equipment on April 14, 2012, at Weissman's request Plaintiff sent in a statement about what happened during August 13, 2012 search with all relevant documents, including the Search Warrant Inventory and Return, which listed all the seized items, while the search warrant expressly stated the searchers "were looking for photos and videos of Erika Paez."  Ex. 7.  So, insists Plaintiff, both Mulville and Weissman knew about the incident.

Moreover, even if Arbitron's legitimate non-discriminatory reason for his discharge, that on two different occasions, Plaintiff was involved in personal relationships that directly resulted in the damage or confiscation of Arbitron's equipment is true, Plaintiff insists that it is evident that a "motivating factor" in the decision to terminate him was Plaintiff's May 18, 2012 complaint.  (The Court again notes that Plaintiff applies the

_____

ever had an intimate relationship, but I had heard rumors.  However, in 2010, Mr. Monsivais expressly denied being married or ever having a relationship with Ms. Paez.  Neither Mr. Monsivais nor Ms. Paez ever informed me that they had a personal relationship until after the April 2012 incident.  I never witnessed them engaging in any intimate behavior with each other during my employment.

Plaintiff has not submitted any evidence controverting this statement.

wrong standard for a retaliation claim.)  The burden then shifts back to Plaintiff, and Plaintiff insists there is adequate evidence to establish that but for his complaint, Plaintiff would have returned to work on May 16, 2012.  The Court notes that he fails to cite to any documentary evidence and only relies on the conclusory "very close proximity," without considering other circumstances.

### Arbitron's Reply (#16)

Arbitron replies that Plaintiff's response is only based on his own self-serving testimony and speculative beliefs that Arbitron retaliated against him for his alleged complaint of sexual harassment against Paez. *Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp. 2d 730, 764 (S.D. Tex. 2010)(sheer speculation and subjective belief are insufficient to meet plaintiff's burden to show a causal connection between a protected activity and an adverse employment action.).  Arbitron argues that Plaintiff cannot establish a *prima facie* case of retaliation, and that even if he could, his claim must be dismissed because he has no evidence to show that Arbitron's legitimate, nondiscriminatory reason for its action was a pretext for retaliation.  Arbitron does not dispute the contents of Plaintiff's May 14, 2012 letter of complaint, and Plaintiff does not claim that he complained on any other occasion in any other manner.  Thus the sole issue for this Court is whether the letter's allegations constitute a statutorily protected activity or whether Plaintiff had a reasonable, good

faith belief that what he complained of was a violation of Title VII or Chapter 21 of the Texas Labor Code.

Although Plaintiff used the word "harassment" in the May 14th complaint letter, Arbitron insists it is not harassment based on a protected activity, sex, as a matter of law. *Brown v. UPS*, 406 Fed. Appx. at 840 (finding employee did not complain about a protected category: "opposition to any practice rendered unlawful by Title VII [race, color, religion, sex, or national origin], including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII"[16] even though he used the word discrimination during his complaint). That Plaintiff formerly had a relationship with Paez does not make his complaint one of sexual harassment:  instead, Plaintiff's complaints indicate there was personal animosity between Plaintiff and Paez after their intimate relationship ended.  Paez's efforts to communicate with Plaintiff were the result of their breakup, not because of Plaintiff's gender or other protected category.  There is nothing in the complaint that implies Paez's contact with Plaintiff constituted unwanted sexual advances.

As for Plaintiff's claim that his May 14, 2012 letter complaint asserted  that he was treated differently from other Arbitron employees who lost or destroyed Arbitron equipment,

---

[16] *Id., citing Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

Arbitron points out that Plaintiff never attributes that different treatment to his gender.  Instead, during his deposition, Plaintiff testified that several individuals, both men and women, were not terminated after they destroyed Arbitron equipment, including a "young man that graduated from A&M."  Ex. A at 110:18-113. Plaintiff could not reasonably have believed that Arbitron was discriminating against him based on his gender if he believed another male employee was treated more favorably than he was. Moreover, his affidavit testimony that he felt he was being discriminated based on his gender at work[17] conflicts with his deposition testimony in which he repeatedly denied making a complaint of sexual harassment.  Pl.'s Dep., Ex. A, 163:20-164:6. *Williams v. Vynckier Enclosure Systems, Inc.*, Civ. A. No. H-04-3223, 2005 WL 2810709, *8 (S.D. Tex. Oct. 17, 2005)("To the extent that [Williams' affidavit] conflicts with his deposition testimony regarding his ability to *fire*, Williams cannot now create a dispute as to material facts with an affidavit which directly contravenes his earlier deposition testimony.").  The Court agrees.

Furthermore, there is no causal connection between Plaintiff's alleged protected complaint and his termination.  Arbitron does not dispute the close temporal proximity between his letter complaint and his termination, but argues that "the relevance of temporal

---

[17] Plaintiff has not asserted a claim for a sexually hostile work environment, but only harassment of him by a co-employee.

proximity surely is minimized by the occurrence of an intervening event that provides a valid basis for termination." *Sechler v. Modular Space Corp.*, No. 4:10-CV-5177, 2012 WL 1355586, at *19 (S.D. Tex. Apr. 18, 2012).  As stated earlier, when Weissman made the decision to allow Plaintiff to return to work, she was unaware of the 2005 incident and of the admonishments given to Plaintiff after it.  Only after Plaintiff sent his letter complaint of harassment did Crabil review Plaintiff's and Paez's personnel files to determine if they had previously received copies of Arbitron's policy on reporting harassment.  Only during this internal investigation did Weissman and Crabil unexpectedly learn of the 2005 incident where Plaintiff's failure to manage his personal relationships also resulted in the loss of Arbitron's equipment, compromised Arbitron's confidential information, and disrupted its business.  Plaintiff's claim that Arbitron "reevaluated" the May 16, 2012 decision to allow Plaintiff to return to work because he complained of harassment is erroneous and not supported by any evidence.

Moreover, Plaintiff has no competent summary judgment evidence to demonstrate that Arbitron's legitimate, nondiscriminatory reason for discharging Plaintiff was a pretext for retaliation.  Outside of his own subjective testimony, Plaintiff has not submitted any testimony of Arbitron decision-makers, but has only made conclusory allegations such as, "It is apparent that a motivating factor in

-33-

the decision to terminate his employment was his May 18, 2012 complaint . . . ."  Pl.'s Response, #15 at p. 23.  It is black letter law that an employee's speculation or subjective belief that he was retaliated against because he engaged in protected activity cannot establish pretext.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005); *Little v. Repub. Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991); *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1263 (S.D. Tex. 1995).  Plaintiff has not shown "that unlawful retaliation would not have occurred in the absence of the alleged wrongful actions of the employer." *Septimus*, 399 F.3d at 610; *Nassar*, 133 S. Ct. 2517 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation.").

In sum, Arbitron has shown that it terminated Plaintiff's employment for the legitimate nonretaliatory reason that on two occasions Plaintiff failed to secure his Arbitron equipment and his personal conduct directly resulted in the confiscation of or damage to that equipment, which, in turn, compromised his ability to perform his work assignments and disrupted Arbitron's business. Moreover, Plaintiff has failed to raise a genuine issue of material fact regarding his retaliation claim.  Thus Arbitron requests that Court to grant it summary judgment.

**Court's Decision**

-34-

After carefully reviewing the record and the applicable law, the Court concludes that Arbitron's motion for summary judgment should be granted for reasons discussed in this Opinion and Order.

First, the Court agrees with Arbitron the Plaintiff fails to establish a *prima facie* case of retaliation. Plaintiff has failed to show that he engaged in a protected activity as defined by Section 21.055 of the Texas Labor Code. As this Court pointed out, Plaintiff clearly and unambiguously testified in his deposition that he was not alleging that Paez sexually harassed him, but only harassed him. #15, Ex. A, Pl.'s Dep., 163:20-164:6. Secondly Plaintiff complained that Paez was harassing him with unwanted phone calls, antagonized him in the elevator after a business team meeting in Houston, and refused to retrieve her personal things from his home after their relationship ended. In his response to Arbitron's motion for summary judgment, Plaintiff conceded that these were inactionable "minor annoyances," not sexual harassment, and stated that they "were not the basis of the Plaintiff's retaliation claim." #15 at p. 16. Subsequently in an apparent attempt to raise an genuine issue of material fact, he subsequently submitted an affidavit averring that he "felt that this was sex discrimination and harassment at work." #15 Pl.'s Affid., Ex. 2. This statement is clearly subjective and speculative. Therefore the charged conduct did not constitute a statutorily protected characteristic under Chapter 21 of the Texas Labor Code (race,

-35-

color, disability, religion, sex, national origin, or age). Even more significant, because the Fifth Circuit has held that "nonmovant cannot defeat summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue," and Plaintiff has failed to explain the contradiction, the Court concludes that affidavit is inadmissible. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). *See also McArdle v. Dell Products,* LP, 293 Fed. Appx. 331, 335 (5th Cir. Sept. 22, 2008)("'It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

Even if Plaintiff had been able to make a *prima facie* case of retaliation, he has not, with his mere conclusory assertion of close proximity while ignoring all the other relevant circumstances, shown that Arbitron's legitimate, nondiscriminatory reason for firing Plaintiff (because his conduct resulted in confiscation of or damage to Arbitron's property and confidential information, which in turn prevented Plaintiff from performing his work tasks and disrupted Arbitron's business) is a pretext for retaliation.   Arbitron has presented documentary evidence to support its articulated reason for firing Plaintiff. *See, e.g.,* See Weissman's Decl. (#15, Ex. B), Mulville's Declaration (#15, Ex. C); Dezelon, Ex. D.

Furthermore, not only does Plaintiff apply the wrong standard ("a motivating factor") for a retaliation claim, but he accordingly fails to provide evidence that "but for" his May 2012 letter complaining of harassment by Paez, he would not have been fired. As noted *supra*, Arbitron, on the other hand, has submitted documentary evidence, uncontroverted by Plaintiff other than by insufficient conclusory allegations, that its legitimate, nondiscriminatory reason for firing Plaintiff was not pretextual.

Accordingly, for these reasons, the Court

ORDERS that Arbitron's motion for summary judgment (#14) is GRANTED.  A final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this  5th  day of  September , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-37-